THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID P. MEYERS, Defendant-Appellant.

First District (4th Division)   No. 76-1241

Opinion filed December 29, 1977.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Thomas X. Smith, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, David P. Meyers, was convicted of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) following a jury trial in the circuit court of Cook County, and was sentenced to serve 1 to 3 years imprisonment with the Illinois Department of Corrections. The defendant appeals and we affirm.

The issues presented for review are (1) whether defendant's participation in the presentence hearing constitutes a waiver of certain alleged irregularities in that hearing and (2) whether the defendant's sentence of a minimum term of 1 to 3 years imprisonment was excessive.

At trial, the complainant, Alfred Throw, testified that on November 28, 1975, he observed the defendant inside his apartment located at 17200 South 71st Street, Tinley Park, Illinois. It was approximately 1 p.m. when Throw was returning home with his wife and two children and was unable to enter through the front door with his key. Throw explained that the inside latch had been thrown against the door and that the latch could only be activated from the inside. The complainant removed his family outside and again entered the vestibule to attempt to enter his apartment. While in the vestibule, he noticed a light on the wall of the inner hall coming from his apartment. Throw then proceeded into the inner hallway where he observed his apartment door opening and the defendant looking directly at him from inside the apartment. Throw stated that he

was located 5 or 6 feet from his apartment door when he first observed the defendant. He testified that the defendant appeared to be preparing to leave the apartment when he looked at Throw and then ran. Throw chased the defendant on foot for approximately 1½ blocks until he caught up with him and shouted at the defendant to stop. He stated that he never lost sight of the defendant during the chase. The defendant then turned around and waved his hands. When the police arrived, Throw told them that the defendant had just broken into his apartment. After the defendant was arrested, Throw returned to his apartment. He testified that the apartment had been ransacked, the window in his bedroom busted, and that $12 in cash was missing from an envelope in his bedroom drawer.

Elizabeth Throw testified that when her husband could not open the door to their apartment he "took me and the kids outside and he went back into the vestibule." She could see him from the outside. He remained in the vestibule for several minutes, started in toward the apartment, and then began to run down the hall in the opposite direction toward the front entrance of the building. She observed a man running in front of him. Mrs. Throw screamed at her husband not to go, but did not try to stop him. She then went to a neighbor's apartment and called the police. She remained with her neighbor until Mr. Throw returned with the police. Mrs. Throw further testified that when she returned to her apartment she observed that it had been ransacked and that the bedroom window was wide open and the screen was busted. Elizabeth Throw testified, as did Alfred Throw, that the defendant was never authorized to enter the Throw apartment.

Edward Fuja, a police officer for the Village of Tinley Park, testified that he arrived at the scene and met the defendant and Alfred Throw. Fuja stated that Throw related to him in summary what had taken place. Throw told him that he had observed the defendant exit his apartment and that he gave chase after the defendant turned and fled down the hallway. Fuja then placed the defendant under arrest.

The defense presented the testimony of Frederick Mohr, an investigator for the public defender's office, who testified regarding an investigation he conducted concerning the physical layout of the burglarized apartment and its relation to other apartments, entrances, and exits in the building.

. The defendant testified that he arrived in the Tinley Park area at approximately 9:45 a.m. on the date in question because he was looking for employment at a shopping center located down the street from the complainant's apartment complex. When he observed that the stores in the center were closed at that time, he went and had a cup of coffee at a nearby coffee shop. He remained in the shop between 30 and 45 minutes.

At approximately 10:20 a.m., the defendant proceeded down the street to the apartment complex looking for the home of a friend of his. The defendant testified that he had not seen his friend since high school and that he did not know his address. He believed that the friend lived somewhere in the area and that he still drove a red Firebird automobile. He spent a good amount of time searching the parking lot of the apartment complex for such a car, but was unsuccessful. He left the parking lot, but remained in the area nearby. Eventually, he noticed a red Firebird turn into the parking lot of the complex. The defendant returned to the lot to see if he could locate the vehicle. According to the defendant, he was on the grass walking between two of the apartment buildings in the complex when he first observed Mr. Throw come out of one of the buildings. He stated that Throw began screaming and running at him. He was frightened, so he turned and ran; the complainant chased him. He finally turned into a building and stopped, where Throw caught him and accused him of breaking into his (Throw's) apartment. The defendant denied breaking into the apartment or ever entering any building in the complex. When the police arrived, the defendant was searched and then arrested. He stated that the arresting officer took the complainant's version of what had occurred, but did not take the defendant's story. He was arrested although, according to him, the search yielded only a key, a Cricket lighter, and 14 cents from his pockets.

In rebuttal, Detective Jogman of the Tinley Park Police Department testified that he interviewed the defendant on the afternoon of the burglary. The defendant did not indicate to Detective Jogman that he had been looking for a job in the area, but did indicate that he was looking for a friend in the apartment complex.

The jury found the defendant guilty of burglary. The defendant requested an appeal bond which was not granted by the trial court because post-trial motions and notice of appeal had not been formally tendered. The court asked if defendant wanted a presentence hearing and defense counsel answered that defendant would not waive his right to presentence investigation. The court then set the presentence hearing for June 24, 1976.

On June 23, 1976, the case was called for presentence investigation and sentencing. Defense counsel informed the court his files indicated the case was set for the following day, the presentence report was not yet available, and that he did not have his case file with him. The court responded that the case was "set today for sentencing purposes." Matters in aggravation were then offered. The trial court asked defense counsel if he wished to state anything at that time. The defense counsel then proceeded to offer matters in mitigation, although he did comment again to the court that he did not have his file with him as he believed the case

was set for the following day. Defense counsel informed the court that the defendant was 18 years of age, residing with his parents, and that he was serving probation at the time for his only prior conviction, a misdemeanor crime in Du Page County. Counsel did not object to the hearing or request a continuance in the matter. Defendant was then sentenced to the Illinois Department of Corrections for a term of 1 to 3 years. The defendant asked the court for probation. The court replied, "[Y]ou elected to have a jury trial and the jury came in with a verdict of guilty. That is the minimum sentence on the charge. * * * You were on probation when you became involved in the situation." The defendant made a further plea for probation and the court stated:

"[A]t your age judgments are rather difficult for this court to make. But you opted for a jury trial and the verdict was guilty. The evidence was rather clear and convincing. That will be the order of the court."

The defendant argues on appeal that his conviction must be remanded for resentencing due to irregularities in the sentencing hearing. He cites section 5—3—1 of the Unified Code of Corrections as support for this contention, which section provides that no person convicted of a felony shall be sentenced before a written presentence report of investigation is presented to and considered by the court. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—3—1.) Furthermore, the presentence report shall be open for inspection to the defendant's attorney at least 3 days prior to the imposition of any sentence, unless the 3-day requirement is waived. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—3—4(b)(2).) The defendant contends that where the trial court allowed the State to proceed in aggravation and sentenced him to a term of imprisonment without considering the ordered presentence investigation report, the court violated defendant's right to have the court impose an informed sentence. (See Ill. Rev. Stat. 1975, ch. 38, par. 1005—3—1.) Defendant points out that this right was not waived prior to the hearing, that defense counsel informed the trial court that he was not prepared at the hearing, and that defense counsel was not afforded the opportunity to inspect the report at least 3 days prior to the hearing. Ill. Rev. Stat. 1975, ch. 38, par. 1005—3—4(b)(2).

Defendant also argues on appeal that the record reveals the trial court erroneously believed defendant could not be granted felony probation when he was on misdemeanor probation from another county (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—5—3(d), 1005—5—3(g)), and that resentencing is required. Defendant further contends that the trial court's references to defendant's election of a jury trial require reversal of his conviction. Defendant cites *People v. Moriarty* (1962), 25 Ill. 2d 565, 567, 185 N.E.2d 688, 689, which provides that an accused is absolutely entitled

to a jury trial and that a sentence which is a punishment for exercising this right is a constitutional deprivation. He insists that the trial court's words clearly reveal that defendant's failure to plead guilty and his exercise of his right to a jury trial made the court decide to give him a sentence of imprisonment rather than probation. We disagree.

■■ Firstly, the law is well established that a defendant may waive his statutory right to a written presentence report of investigation. Section 5—3—1 of the Unified Code of Corrections specifically provides that "The defendant may waive the presentence investigation and written report." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—3—1.) The standard to be followed in determining whether a defendant has validly waived his right to a presentence report is that the waiver be knowing and voluntary. (*People v. Barto* (1976), 63 Ill. 2d 17, 20, 344 N.E.2d 433, 436.) In *Barto*, our supreme court stated:

> "Insofar as the statutory requirement of a written presentence report is concerned, we think it is clear from the record that the defendant understood that he had a right to a presentence report, and that he knowingly waived that right, as section 5—3—1 permits him to do." (*Barto*, at 20.)

In *People v. Lambrechts* (1976), 41 Ill. App. 3d 729, 737, 355 N.E.2d 53, 60, the court found that the defendant's statements, actions and inactions served to waive the statutory 3-day requirements concerning availability of the presentence report. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—3—4(b)(2).) Furthermore, a defendant ordinarily speaks and acts through his attorney, and where he permits a waiver in his presence and without objection, defendant is deemed to have acquiesced in, and is bound by, the attorney's action. See *People v. Sailor* (1969), 43 Ill. 2d 256, 260, 253 N.E.2d 397, 399.

■■ In the instant case, neither the defendant nor his attorney objected to the hearing proceeding on the 23d, nor did they request a continuance. Neither the defendant nor his attorney objected to the absence of a presentence report. The record evinces that defense counsel and defendant, through his counsel, were aware of defendant's right to a presentence report, since defense counsel specifically refused to waive this right prior to the hearing. However, on the 23d, the defendant's attorney told the court he was unprepared but did not request a continuance or object to having the hearing proceed. The court permitted the State to present matters in aggravation and asked defendant if he had any response. The defendant had no response. Defense counsel then presented matters in mitigation to the court and the court rendered judgment on the verdict and a sentence. The defendant then offered additional matters in mitigation to the court. Under these circumstances,

we find that the defendant's participation and acquiescence in the hearing served to waive his right to have a written report of presentence investigation considered by the court.

■■■ Secondly, although it is true, as defendant contends, that an accused is absolutely entitled to a jury trial and that a sentence which is a punishment for exercising this right is improper (*People v. Moriarty* (1962), 25 Ill. 2d 565, 567, 185 N.E.2d 688, 689), the instant record fails to establish that the sentence imposed by the court was either unreasonable or the result of any wrong intent on the part of the court. A further examination of the record fails to reveal that the court operated under any erroneous belief when it sentenced the defendant to the minimum term of imprisonment for the offense for which he was convicted, rather than granting him probation. At no time did the court state that defendant was ineligible for felony probation because he was serving misdemeanor probation at the time of this offense. The court merely pointed out to the defendant that he was on probation at the time when he committed the felony offense, in response to defendant's continued plea for a grant of felony probation. The court properly considered this as a factor when it refused to grant the defendant probation and imposed a minimum sentence. The decision to impose a sentence of imprisonment is properly within the discretion of the trial court. Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—3(d).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.